Phil S. Flemming (#014778)
ROBAINA & KRESIN PLLC
6017 North 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Facsimile: (602) 682-6455
psf@robainalaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Carrie L. Candler an individual,<br><br>　　　Plaintiff,<br><br>v.<br><br>Town of Gilbert, a municipal corporation of the State of Arizona; Town of Gilbert Police Department, an agency of the Town of Gilbert; Michael Soelberg, in his official capacity as Chief of Police for Town of Gilbert; Randy Brice, in his official capacity as Assistant Chief of Police for Town of Gilbert,<br><br>　　　Defendants. | No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Carrie L. Candler ("Ms. Candler" or "Plaintiff"), by undersigned counsel, for her Complaint against the Town of Gilbert, the Town of Gilbert Police Department, Chief Michael Soelberg, and then-Assistant Chief Randy Brice (collectively referred to at times as "Defendants"), alleges as follows:

**NATURE OF ACTION**

1. This is an action seeking money damages and equitable relief for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., the Arizona Civil Rights Act, A.R.S. § 41-1463, the Arizona Employment Protection Act, A.R.S. § 23-1501, and 42 U.S.C. § 1983, related to Ms. Candler's employment with Town of Gilbert, Police Department and the actions of the individual Defendants who acted as employers and as agents authorized by Defendant Town of Gilbert and Defendant Police Department.

**PARTIES, JURISDICTION AND VENUE**

2. Ms. Candler is a United States citizen residing in Maricopa County, Arizona.

3. Defendant Town of Gilbert is a public municipality operating in Maricopa County, Arizona. At all relevant times, Defendant caused events to occur in Arizona out of which the claims being asserted herein arose.

4. Defendant Town of Gilbert acts by and through its officials, employees, and agents, including each of the other named Defendants.

5. Defendant Town of Gilbert is vicariously liable for acts and omissions of its agencies, officials, employees, and agents, including those named as the other Defendants, who were acting in the scope of their authority or employment with Town of Gilbert.

6. At all relevant times, Defendants were acting under color of state law, for purposes of certain federal claims, pursuant to the U.S. Constitution, 42 U.S.C. § 1983.

7. At all relevant times, Defendant Town of Gilbert, its Police Department, and each of the individually named Defendants was acting as an employer pursuant to Arizona statute that defines "Employer" as an "individual or other entity acting directly or indirectly in the interest of an employer in relation to an employee …." A.R.S. § 23-362.

8. Defendant Town of Gilbert Police Department is an agency of the Town of Gilbert, Arizona, which is organized and operates under the authority of the State of Arizona.

9. Defendant Michael Soelberg is Chief of Police and a sworn officer for Town of Gilbert and is named in his official capacity. His acts and omissions were done within the scope of his official position and employment with Town of Gilbert.

10. Defendant Randy Brice was the Assistant Chief of Police and a sworn officer for Town of Gilbert at the relevant times and is named in his official capacity. His acts and omissions were done within the scope of his official position and employment with Town of Gilbert.

11. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, specifically Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e *et seq*. and 42 U.S.C. § 1983.

12. Supplemental jurisdiction over Ms. Candler's state law claims is proper pursuant to 28 U.S.C. § 1367.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to the claims occurred in this District.

14. Plaintiff timely filed her charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").

15. Plaintiff received the Notice of Right to Sue from the U.S. Department of Justice ("DOJ") on September 17, 2020 and timely commenced this action within ninety days of its receipt.

16. Plaintiff timely served a notice of claim upon Defendants, pursuant to A.R.S. § 12-821.01. More than sixty days have passed since service of the notice of claim and Defendants have failed to respond.

17. Plaintiff requests a trial by jury in this matter.

**FACTUAL BACKGROUND**

18. Plaintiff incorporates all other paragraphs in this Complaint as though fully set forth herein.

19. Defendant Town of Gilbert and Plaintiff entered into a written contract of employment by Plaintiff accepting the written Offer of Employment from Defendant Chief Michael Soelberg, executed by Plaintiff on November 28, 2017 ("Contract"), for her to serve as a Commander with the Town of Gilbert Police Department.

20. Prior to commencing employment with Town of Gilbert Police Department, Plaintiff had more than fifteen years' experience as a Peace Officer with the Scottsdale Police Department, where she rose to the rank of Lieutenant.

21. Plaintiff was a sworn Police Officer, serving as Commander with Town of Gilbert Police Department. *See* Town of Gilbert Personnel Rule 2.50 (Sworn Police Employee).

22. Among the terms set forth in the parties' Contract is the provision that "terms

of your employment including compensation, reporting structure, benefits, budgetary needs, and personnel rules are subject to change."

23. Defendant Town of Gilbert's Personnel Rules 1.3.8 and 2.6 expressly provide that sworn Police Officers are not subject to the Town's at-will employment status.

24. Upon information and belief, the Defendants failed to meaningfully investigate Plaintiff's complaints of discrimination and unfair treatment.

25. The discrimination against Plaintiff continued due to Defendants' lack of support and implementation of meaningful corrective actions.

26. Plaintiff applied best practices in her leadership role as Commander.

27. Plaintiff cleared out the backlog of critical incident reviews, initiated policy changes, restructuring and best practices for the benefit of Defendant Police Department.

28. Some officers resented the leadership role of a female, exercised by Plaintiff.

29. In reviewing Plaintiff's performance, Defendant Chief Soelberg documented that "prior Commanders did not hold employees accountable" which created problems for Plaintiff.

30. One officer, then with the K9 Unit and a leader within the Gilbert Police Leadership Association, circumvented his chain of command and Plaintiff and spoke directly with Defendant Chief Soelberg and the Deputy Town Manager to criticize Plaintiff and her implementation plans for the Unit.

31. After those criticisms about Plaintiff's plans, management moved the reporting structure for the K9 Unit to the Central District, outside Plaintiff's direct oversight.

32. The Central District used Plaintiff's implementation plans, putting it in place.

33. The K9 Unit officer that had criticized Plaintiff to her superiors now accepted the same plan she prepared when it was implemented by a male Commander.

34. On June 19, 2018, Defendant Chief Soelberg and Assistant Chief Thompson called Plaintiff to a meeting, where they presented her a one-page Plan of Action. She learned that the Gilbert Police Leadership Association, pursuant to actions of its then vice-

- 4 -

president Officer Steve Gilbert, had compiled and submitted a list of allegations against her as grievances of her leadership.

35. Defendant Chief Soelberg determined it was appropriate to place Plaintiff on a Plan of Action in response to the Association's list of grievances.

36. On information and belief, the Gilbert Police Leadership Association would not have submitted a list of grievances to management and Defendants would not have submitted a Plan of Action if Plaintiff had been a male commander based on similar circumstances.

37. During October 2018, Officer Gilbert, then vice-president of the Gilbert Police Leadership Association, and Sergeant Jason Roman, then president of the Association, acted with bias toward Plaintiff based on her sex and created division and hostility among the personnel and leadership.

38. Officer Gilbert and Sergeant Roman falsely represented to the Gilbert Police Leadership Association members that "multiple officers" had complained about Plaintiff when, in fact, those Association leaders had persuaded only one person, Officer Joseph Rohr, to initiate a complaint against Plaintiff.

39. Officer Rohr, assisted by the Gilbert Police Leadership Association, complained that Plaintiff had "targeted" him for performance inquiries and he asked that Plaintiff be "removed from Gilbert PD."

40. During the investigation, Plaintiff received a demeaning image titled "American Society for the Prevention of Cruelty to Candler," reflecting division among the officers who supported her and those who targeted her.

41. The thorough investigation into Officer Rohr's complaint was concluded, and it fully exonerated Plaintiff of any wrongdoing.

42. Officer Gilbert initiated rumors that Plaintiff would be discharged, even after the investigation into Officer Rohr's allegation was found unsubstantiated.

43. The Gilbert Police Leadership Association conducted a survey of its members, later in 2018, that was biased to "elicit a negative response" about Plaintiff,

according to notes by Assistant Chief Thompson.

44. Assistant Chief Thompson acknowledged to Plaintiff that the survey comments largely reflected rumors and innuendo, not specific concerns, and that many negative comments related to matters where the investigation had fully vindicated Plaintiff's actions.

45. At that time, Plaintiff was serving as the only sworn female commander in the Defendant Police Department.

46. Defendants condoned and tolerated unfair treatment of Plaintiff permitting disparate treatment of male commanders and male employees compared with females to permeate the workplace.

47. Criticisms against Plaintiff's performance for her alleged communication style and abrasiveness evidenced criticisms against a female in authority which would not have been the basis of complaints, grievances, or a Plan of Action if Plaintiff had been male.

48. Defendants failed to take appropriate actions to prevent bias in the workplace and thereby undermined Plaintiff's authority.

49. Defendants failed to take appropriate actions to support Plaintiff's authority and leadership actions, including her efforts to impose accountability consistent with the governing laws and rules.

50. A male commander, Mike Angstead, informed Plaintiff, during fall of 2019, that Officer Gilbert told him that he did not want to work with a female in the K9 Unit, as they were interviewing to select an officer for that position.

51. The same male commander expressed concern when a female officer was selected for the K9 Unit position, acknowledging that females were subjected to unequal work conditions.

52. During December 2019, Defendant Chief Soelberg met with Plaintiff and directed her to meet with Deputy Fire Chief Rob Duggan because he had reported that she had unprofessional communication during a meeting held earlier in the month.

53. During that meeting, Plaintiff attempted to explain the cause of that communication breakdown to Defendant Chief Soelberg, but he would not listen and told her she must apologize to Deputy Fire Chief Duggan.

54. Plaintiff met with Deputy Fire Chief Duggan to smooth things over, as she was directed, and he took the responsibility for the breakdown in communications.

55. Defendants had escalated an unfounded criticism about the communications with Deputy Fire Chief Duggan which they would have disregarded had she been male or the criticism been against a male commander.

56. In January 2020, Defendant Chief Soelberg and Defendant Randy Brice, then-Assistant Chief, each had a one-on-one meeting with Plaintiff. She discussed that she was being unfairly criticized and targeted for unfounded allegations by officers who did not want to work under a female commander. She sought their support for her authority and to prevent disparate treatment.

57. During January 2020, a Department incident involved a SWAT call-out for a domestic violence call.

58. During a pre-scheduled meeting with members from the Special Assignment Unit ("SAU"), Sergeant Roman notified Plaintiff that he had delivered a letter about the incident to Defendant Chief Soelberg and had advised SWAT personnel not to discuss the matter with her. He implied that her performance was challenged. Sergeant Roman then stormed out of the conference room and unprofessionally slammed the door.

59. Sergeant Roman lacked authority to instruct officers not to speak with their supervisor, Plaintiff, about the matter.

60. On January 28, 2020, Plaintiff prepared a memorandum to Defendant Assistant Chief Brice describing the insubordinate conduct of Sergeant Roman and disclosing concerns over the culture and work environment. Plaintiff asked for a meeting with Defendant Assistant Chief Brice to discuss the concerns, but he failed to hold the meeting she requested.

61. Based on Sergeant Roman's letter to Defendant Chief Soelberg, Defendant

Police Department conducted an internal inquiry, Office of Professional Standards ("OPS") #2020-006, into the circumstances of the SWAT call-out at the domestic violence call.

62. On January 29, 2020, OPS called Plaintiff for a witness interview, following delivery of the Notice of Investigation. During her interview, Plaintiff provided the investigators copies of her texts with Lieutenant Geoff Soderman relevant to the incident, a copy of the call for service comments, and a copy of the departmental report.

63. Plaintiff reported to the investigators her concerns about noncompliance with state law upon entry into the residence, arrest of the suspect, and search of the residence, repeating the concerns she had shared with Defendant Assistant Chief Brice at their January 28, 2020 meeting.

64. At the conclusion of the OPS interview of Plaintiff, the investigators acknowledged that she had left the decision about whether to cancel the SWAT response to Lieutenant Soderman.

65. One of the OPS investigators told Plaintiff he was surprised that the actions of certain male officers with respect to the SWAT call-out incident had not been investigated.

66. The disparate treatment of males in connection with questions raised about the SWAT call-out incident is one of multiple examples of the different treatment toward males whose conduct was questioned by the female commander compared with the quick escalation of investigations and adverse actions when males questioned the conduct of the female commander.

67. At a February 18, 2020 meeting with the entire SWAT team, Defendant Chief Soelberg, Defendant Assistant Chief Brice, Assistant Chief Thompson and Plaintiff, Lieutenant Soderman disclosed that he had been untruthful and not forthcoming about his role in the incident at the January 27, 2020 SWAT team meeting.

68. In fact, Lieutenant Soderman had cancelled the SWAT call-out for the incident but he had led the SWAT team to blame Plaintiff for that decision to cancel the

- 8 -

1  SWAT call and charging that she had violated departmental procedures.

2  68. [sic] 69. The internal inquiry into OPS #2020-006 exonerated Plaintiff and confirmed Lieutenant Soderman was the one who had cancelled the SWAT call.

70. At the conclusion of the February 18, 2020 meeting, Plaintiff again asked Defendant Assistant Chief Brice to schedule a meeting to discuss her January 28, 2020 memorandum and concerns about Sergeant Roman. Defendant Assistant Chief Brice said that "everyone" should meet after he completed his conclusion memorandum on the OPS #2020-006 inquiry.

71. Defendant Assistant Chief Brice scheduled a March 5, 2020 meeting with Lieutenant Soderman, Sergeant Roman, and Plaintiff, where they reviewed his conclusion memorandum.

72. During the March 5 meeting, Plaintiff learned that Sergeant Roman had initiated the investigation by his letter that claimed the SWAT team "unanimously concluded" that Plaintiff had "violated basic operational principals and undermined the decisions of on-scene personnel," by canceling the SWAT call-out.

73. The inflammatory allegations by Sergeant Roman against Plaintiff were false and intended to harm Plaintiff.

74. In fact, Lieutenant Soderman had cancelled the SWAT call-out, as confirmed by the OPS investigation.

75. Plaintiff later learned from other members of the SWAT team that there never had been a unanimous decision to report her actions and that only a few of the SWAT members supported the accusatory letter that Sergeant Roman wrote against her.

76. Defendant Assistant Chief Brice's conclusion memorandum incorrectly stated that Plaintiff had cancelled the SWAT call and did not refer to Lieutenant Soderman's actions. Plaintiff pointed out these mistakes in the conclusion memorandum and Defendant Assistant Chief Brice said he would distribute a corrected memorandum.

77. The corrected memorandum that Defendant Assistant Chief Brice distributed minimized the responsibility of Lieutenant Soderman for his action and his untruthfulness

1  about his role, and the memorandum made it appear only as if Plaintiff had not used specific wording of "cancel SWAT."

78. During the March 5 meeting, Defendant Assistant Chief Brice still did not discuss Plaintiff's concerns set forth in her January 28, 2020 memorandum.

79. Defendant Assistant Chief Brice's actions minimized accountability for male officers and repeatedly and unfairly undermined and challenged Plaintiff's authority and performance.

80. When asked again about taking action on Plaintiff's January 28 memorandum, Defendant Assistant Chief Brice told Plaintiff that any disciplinary action for Sergeant Roman's unprofessional, insubordinate conduct would be perceived as retaliation so the matter was brushed away.

81. The Defendant Police Department conducted an audit of Plaintiff's units, in March 2020. Most of the audit reported positively on her performance and leadership. The Policy and Compliance Unit reported they received positive feedback and Gerald Kaphing's audit report complimented her performance.

82. In April 2020, Plaintiff received her 360 feedback evaluation that was generally positive and consistent with her 2019 performance review rating of "exceeds."

83. On April 20, 2020, Plaintiff addressed a discrepancy concerning evidence impounded in March 2020 by sending a follow-up email to Lieutenant Soderman who had informed her on April 2, 2020 that there was a "data entry error."

84. Concerning the same discrepancy, Sergeant Roman responded to the April 20, 2020 follow-up email by claiming the initial evidence report had been a "guesstimate" which already had been addressed in a supplement. Sergeant Roman then determined that the supplement had never been completed and said he would follow-up on the issue.

85. Plaintiff pointed out in a second email to Lieutenant Soderman on April 20, 2020, that the differing responses created a discrepancy and that the officers needed to address the accountability and administrative concerns. Lieutenant Soderman replied via email and asked for clarification of what was needed.

86. Plaintiff forwarded the email communications to Defendant Assistant Chief Brice and requested a meeting with him, Lieutenant Soderman, and Sergeant Roman to discuss the discrepancy and responses provided.

87. Three days later, on April 23, 2020, Defendants terminated Plaintiff from employment, without notice and without a pre-termination or post-termination hearing to protect her due process rights.

88. Defendants initially gave no reason for the termination of her employment and asserted she was an at-will employee so no reason was needed.

89. Defendants denied that Plaintiff was entitled to notice of the termination of her employment.

90. Defendants denied that Plaintiff was entitled to a pre-termination hearing on the termination of her employment, consistent with the Arizona Peace Officer Bill of Rights and the Town of Gilbert Code.

91. Defendants also have denied Plaintiff a post-termination hearing on the termination of her employment.

92. Defendant Town of Gilbert's Personnel Rules expressly state that sworn officers, of which Plaintiff was one at the relevant time, are not considered at-will employees.

93. Personnel Rule 1.3.8, "Service Definitions, Responsibilities, and Protections," excepts police officers from at-will status and states:

> Employment with Gilbert is at-will and may be terminated by either the employee or Gilbert with or without cause, and with or without notice, at any time. Exceptions to this at-will statement include sworn Fire and Police employees, in addition to certain non-exempt positions designated as "covered" and hired prior to August 1, 2018.

94. Personnel Rule 2.6 excludes sworn police officers from the Town's definition of "At-Will Employee," stating:

> Employment with Gilbert is at-will and may be terminated by either the employee or Gilbert with or without cause, and with or without notice, at any time. Exceptions to this at-will statement include sworn Fire and Police

- 11 -

employees, in addition to certain non-exempt positions designated as "covered" and hired prior to August 1, 2018.

95. Subsequently, Defendants' representative asserted in writing that Plaintiff was terminated due to "her direct and abrasive communication style, failure to clearly communicate directives, and negative interactions with staff," further claiming she had "ongoing performance issues."

96. The stated reasons for termination are contrary to the 2019 Performance Review and the March 2020 360 feedback evaluations.

97. The stated reasons for termination are discriminatory and a pretext.

98. The alleged reasons asserted against Plaintiff for her termination would not rise to the level of grounds for discipline or termination if charged against a male commander.

99. Plaintiff is aware that wrongdoing and performance issues of male commanders and officers are overlooked or ignored, including ones she reported concerning male officers that did not result in investigation, discipline, or termination of male commanders and officers.

100. Plaintiff has observed that an incident of wrongdoing or performance involving male employees was investigated by Defendants only after it gained public attention that pressured the need to take action.

101. Defendants disregarded or dismissed Plaintiff's requests for corrective action and her complaints about misconduct concerning male officers which led to the escalated unfounded allegations and complaints against her.

102. After Plaintiff persisted in seeking management's attention to the misconduct of male officers, Defendants took unfair adverse actions against her, escalating to her termination.

103. Defendants treated Plaintiff adversely compared with male colleagues and subjected her to unequal and unfair treatment in terminating her.

104. Plaintiff has been wrongfully deprived of her property interest without due

process and is entitled to award of damages against all Defendants for the violations.

105. Plaintiff has been wrongfully deprived of her liberty without due process interest and is entitled to award of damages against all Defendants for harms to her personal and professional reputations.

106. Plaintiff has suffered and continues to suffer lost wages, benefits, and lost future wages and benefits due to the termination and adverse employment actions, and violations of her rights by Defendants.

107. Plaintiff has suffered damages to her career and professional reputation due to the stigma of adverse employment actions and violations of her rights by Defendants. She is entitled to a name clearing hearing.

108. Plaintiff has suffered emotional distress damages due to the adverse employment actions and violations of her rights by Defendants.

109. Plaintiff has incurred attorneys' fees and costs as a result of the adverse actions , and violations of her rights by Defendants.

## LEGAL ANALYSIS

## **Claim One Against Town of Gilbert and its Police Department**

## **Disparate Treatment Discrimination and Retaliation in Violation of**

## **Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.**

110. Plaintiff incorporates all other paragraphs in this Complaint as though fully set forth herein.

111. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-(2)(a) makes it unlawful for an employer "(1) . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex …."

112. Disparate treatment discrimination can be established with direct or circumstantial evidence showing the employer intentionally "treats some people less favorably than others because of their …sex." *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977).

113. Ms. Candler was treated less favorably than the male counterparts in their employment with Defendants.

114. Defendants' denials of due process with notice and a hearing also constitute disparate treatment.

115. Ms. Candler was subjected to repeated unfair criticisms, false accusations investigations, and humiliation in front of other employees, including officers she supervised. Her male counterparts were not subjected to similar treatment.

116. As a result of the continued disparate treatment, Ms. Candler suffered damages in amount to be proven at trial.

117. Plaintiff also will seek recovery of her attorneys' fees and costs upon prevailing on this claim.

**Claim Two Against Town of Gilbert and its Police Department**

**Disparate Treatment Discrimination and Retaliation in Violation of**

**the Arizona Civil Rights Act, A.R.S. §§ 41-1461, *et seq.***

118. Plaintiff incorporates all other paragraphs of this Complaint as though fully set forth herein.

119. The Arizona Civil Rights Act ("ACRA"), A.R.S. § 41-1463(B)(1) makes it unlawful for an employer:

> "[t]o fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's … sex."

120. The ACRA also prohibits unlawful retaliation against an employee for protected actions, including opposition to unlawful discrimination.

121. Plaintiff was discriminated against on the basis of her sex.

122. Plaintiff was treated less favorably than their male colleagues and subjected to adverse employment actions.

123. Defendants took employment actions that adversely impacted the conditions employment of Plaintiff.

124. Defendants had authority but did not resolve the discrimination against Plaintiff despite their knowledge of and her complaints about unequal and unfair treatment.

125. After Plaintiff challenged the disparate treatment at the workplace, Defendants failed to take action to correct the discrimination and condoned the retaliation that escalated against her.

126. Defendants retaliated in violation of the ACRA, by taking adverse employment actions based upon Plaintiff's protected activities.

127. As a result of the discrimination based on sex, Plaintiff suffered damages in amount to be proven at trial.

128. Defendants are liable for the violations to Plaintiff for equitable relief of back pay, front pay, and lost employee benefits, plus interest.

129. Plaintiff also seeks recovery of her attorneys' fees and costs incurred in connection with this claim.

## Claim Three Against All Defendants

## Discharge in Violation of the Arizona Employment Protection Act,

## A.R.S. § 23-1501

130. Plaintiff incorporates all other paragraphs of this Complaint as though fully set forth herein.

131. Plaintiff was an employee and Defendants Town of Gilbert, Police Department, Chief Soelberg, and Assistant Chief Brice are employers, within the meaning of A.R.S. § 23-1501 and § 23-362(A).

132. Pursuant to Arizona statute, A.R.S. § 23-362(B), the definition of employer includes an "individual or other entity acting directly or indirectly in the interest of an employer in relation to an employee. . . ."

133. The Arizona Employment Protection Act (AEPA), A.R.S. § 23-1501(A)(3)(c)(ii) affords an employee a claim against her employer where the employee is terminated in retaliation for:

///

> The disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations …

134. The AEPA, A.R.S. § 23-1501(A)(3)(a), also provides a cause of action where "The employer has terminated the employment relationship of an employee in breach of an employment contract,"

135. Plaintiff reasonably disclosed to Defendants who had authority to take corrective actions that she was being subjected to discrimination on the basis of her sex and was treated less favorably than male employees.

136. Plaintiff also reasonably disclosed to Defendants misconduct of certain officers that she reasonably believed violated state law.

137. Defendants failed to take reasonable actions to investigate and take corrective action to prevent the violations of state laws.

138. Instead, Defendants took retaliatory actions against Plaintiff, escalating unfair criticisms and inquiries into her conduct and terminating her employment.

139. Defendants' violations of Plaintiff's rights mean she is entitled to judgment in her favor and award of damages and relief from Defendants for the violation, as proved at trial.

## Claim Four Against Town of Gilbert and its Police Department
## Violations of Civil Rights, 42 U.S.C. § 1983

140. Plaintiff incorporates all other paragraphs of this Complaint as though fully set forth herein.

141. The Fourteenth Amendment of the United States Constitution prohibits violations of an individual's civil rights acting under color of state law.

142. At all relevant times, Defendants were acting under color of state law in connection with the claims in this action.

143. Pursuant to 42 U.S.C. § 1983, Defendants' actions violate the Due Process Clause of the 14th Amendment of the United States Constitution.

144. Plaintiff holds a property right in her employment and a liberty interest in her reputation.

145. The employment Contract between Plaintiff and Defendant Town of Gilbert and Defendant Police Department and the Personnel Rules the Contract incorporates provide that sworn police officers, such as Plaintiff, are not subject to at-will employment.

146. Arizona state law, specifically the Arizona Peace Officer Bill of Rights, A.R.S. §§ 38-1101, *et seq.*, establish the requirements of "just cause" and the due process procedures prior to a discipline or termination of a sworn officer.

147. Defendants have violated Plaintiff's rights to due process before her termination, when they terminated her without notice and without a pre-termination hearing required by law and pursuant to her employment contract. *e.g.,* A.R.S. §§ 38-1104 and 1106 (procedural protections to be implemented for the officer-employee during an employer's notice and investigation of misconduct, the hearing, and appeal rights).

148. Plaintiff has suffered and continues to suffer damages as the result of Defendants' failure to extend substantive and procedural due process to her.

149. Plaintiff seeks recovery of her damages in the amount proved at trial.

150. Plaintiff also seeks recovery of her attorneys' fees and costs in connection with this claim, pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff requests Judgment in her favor on each claim and against each of the Defendants against whom the claims are stated, awarding Plaintiff the following relief:

    A.    for back pay, lost benefits and seniority, and front pay;

    B.    for reinstatement into her position, with seniority and benefits due,

    C.    for compensatory damages, including relief for emotional distress and damages to her reputation;

    D.    for a declaration that clears her name;

E. for attorneys' fees and costs;

F. for interest on any judgment from the date of entry of judgment until paid in full; and

G. for any other damages or remedies the Court deems just and reasonable.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in this matter as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED this 6th day of October 2020.

ROBAINA & KRESIN PLLC


By /s/ Phil S. Flemming
    Phil S. Flemming
    Attorneys for Plaintiff